ROSE COOPER, Respondent, *v.* THE PUBLIC NATIONAL BANK OF NEW YORK, Appellant.

First Department, March 21, 1924.

**Banks and banking — action to recover money alleged to have been deposited by plaintiff — bank credited plaintiff's father with deposit by mistake and father withdrew amount so credited — deposit was then made in plaintiff's name — defendant deducted father's overdraft from this deposit — evidence shows that money deposited in plaintiff's name belonged to father — defendant not estopped by bank book.**

The defendant bank which, through a mistake, gave plaintiff's father credit for a deposit that he did not make and which he withdrew before the mistake was discovered, was justified in charging the amount of such erroneous credit against a deposit subsequently made in the name of the plaintiff, and the amount thereof cannot be recovered from the defendant, since the evidence establishes that, while the deposit was made in the name of the plaintiff, the money which was deposited belonged to the plaintiff's father.

The defendant is not estopped by the recital in the bank book issued in the plaintiff's name, since the bank book is nothing more than a receipt which is subject to explanation.

APPEAL by the defendant, The Public National Bank of New York, from an order and determination of the Appellate Term of the Supreme Court, First Department, entered in the office of

the clerk of the county of New York on the 7th day of June, 1923, reversing a judgment of the Municipal Court of the City of New York, Borough of Manhattan, Second District, in favor of the defendant and directing judgment absolute in favor of the plaintiff.

*Moses & Singer* [*Benjamin H. Margolies* of counsel; *Henry B. Singer* with him on the brief], for the appellant.

*Louis Rosenberg* [*Jacob J. Fischer* of counsel], for the respondent.

MERRELL, J.:

The action is brought by this plaintiff, Rose Cooper, to recover moneys claimed to be the property of, and which have been deposited by, the plaintiff with the defendant, and which the defendant refused to pay upon plaintiff's demand.

The plaintiff claimed upon the trial that on or about the 4th day of March, 1920, she opened an account in the defendant bank under the name of "Rose Cooper, Charles Cooper, Power of Attorney," by making a deposit in the sum of $850. It was the contention of the defendant that while such deposit was made in the name of the plaintiff by Charles Cooper, the moneys in fact belonged to, and the account was really that of, Charles Cooper, plaintiff's father.

Charles Cooper, plaintiff's father, prior to the opening of the account in question, had had an account for some time with the defendant bank. His account, however, had been reduced to a small balance of $9.76, and for some time said small balance had remained in the defendant bank to the credit of Charles Cooper and his said account had become dormant. It appears, however, that monthly statements were rendered by the bank to all of its depositors, including Charles Cooper. It further appears from the testimony that another concern, the Eureka Lighting Supply Company, made a deposit with the defendant bank which was erroneously credited to the dormant account of Charles Cooper in the sum of $254.68. This credit was posted to Charles Cooper on March 10, 1920, and on March 20, 1920, Charles Cooper, evidently discovering that his dormant account had been swelled by the erroneous posting of the bank to $264.44, drew his check for the whole amount and closed his personal account. This check was honored by the bank. Shortly thereafter the bank discovered its mistake and sought to find Cooper, but was unable to do so after diligent search and inquiry. The bank then discovered facts which convinced it that the account in the name of the plaintiff, Rose Cooper, Charles Cooper, Power of Attorney, was in fact the account of Charles Cooper, who had dishonestly withdrawn the moneys erroneously passed to the credit of his personal account,

First Department, March, 1924. [Vol. 208

and thereupon the bank offset the amount of his overdraft against the account in the name of the plaintiff. When plaintiff was furnished a monthly statement showing the withdrawal of $254.68, she visited the defendant bank and claimed that the account was hers and that it was entirely separate and distinct from her father's business. The bank officials then inquired of the plaintiff as to the whereabouts of her father, but she refused to divulge the same, but demanded that she be paid the amount which had been offset against the account in her name. This the bank refused to do, and the present action was brought to recover the same.

It appeared from the evidence upon the trial that Charles Cooper, the father, had been for some time in the business of buying and selling junk in a small way, and that a few days prior to the deposit of $850 in the name of the plaintiff, " Charles Cooper, Power of Attorney," he had ceased doing business, and that the plaintiff claimed to have succeeded to his business. The plaintiff testified that her father had ceased doing business about a week before she commenced. The testimony was that the plaintiff was a young girl just out of high school, having taken a two years' course in a college night school, and at the time of the alleged opening of the account and taking over of the business she was engaged to be married and was in fact married two months later and moved to Pottsville, Penn., where she made her permanent residence and resided at the time of the trial. The evidence showed that all checks drawn upon the plaintiff's account were drawn by her father, and that he managed the business entirely and attended to all the details thereof, and that the plaintiff had little or no connection therewith. The plaintiff was unable to give any definite light as to where she obtained the money with which she claims to have made the deposit of $850 on March fourth. Her testimony was most evasive and indefinite and highly contradictory of that which she had given on a previous trial of the action. She was unable to state whether the money was in cash entirely or whether it was represented in part by checks, or where it came from. She testified on the prior trial that it was in a certain savings institution, and the testimony of the savings bank official contradicted such testimony on the part of the plaintiff. She finally testified on the present trial that the money was furnished her by her sweetheart, and admitted that she had given no such testimony on the prior trial, but had then claimed that she had the money herself. The plaintiff was able to give no coherent testimony as to the source or character of the money which she claims to have deposited. It appeared that no part of it was ever checked out by her personally. The circumstances

as revealed by the evidence raised a strong inference that there was in fact no change in the business of Charles Cooper at the time when plaintiff claims to have taken it over, and that the deposit, while in plaintiff's name, was in fact a deposit of the moneys of Charles Cooper, and that plaintiff had no personal interest therein. Under such circumstances, the real owner having dishonestly withdrawn the said moneys which concededly belonged to others, subjected the account in plaintiff's name, which he in fact owned, to being offset by the amount of his dishonest withdrawal; and where it appeared, as I think it did fairly from the testimony in the case, that the ownership of the account in plaintiff's name was in fact in her father, the bank was entirely justified in offsetting his indebtedness to it against said account. (*Falkland* v. *St. Nicholas National Bank of New York*, 84 N. Y. 145; *Straus* v. *T. N. Bank*, 122 id. 379; *Delahunty* v. *Central National Bank*, 63 App. Div. 177; *Aidala* v. *Savoy Trust Co.*, 128 N. Y. Supp. 619.) The case last cited was a decision of the Appellate Term. The opinion of Mr. Justice SEABURY so succinctly states the law upon the subject that I quote as follows:

" SEABURY, J. The plaintiff, an infant, brings this action through his guardian *ad litem* to recover the amount of a deposit made with the defendant. For a defense the defendant alleged that the deposit was in fact made by Giuseppe Aidala, who represented himself to be Rosario Aidala, in which name the account was kept, and that such depositor was indebted to it in a sum in excess of the amount claimed. The court below found the facts to be as alleged by the defendant, and gave judgment accordingly. From that judgment, the plaintiff appeals to this court.

" The only question in issue is as to who was in fact the real depositor of the money for the recovery of which this action is brought. It is true that the money was deposited in the name of ' Rosario Aidala;' but the evidence established that Giuseppe Aidala, representing himself to be Rosario Aidala, in fact made the deposit. It was also shown that, at the time of the deposit by Giuseppe Aidala, he signed the signature book at the bank, and that subsequently he personally drew checks upon that account. It was also shown that Giuseppe Aidala was indebted to the defendant to an amount in excess of the deposit claimed. Under these circumstances, we think the court below properly gave judgment for the defendant.

" The fact that Giuseppe Aidala deposited the money under the name of Rosario Aidala does not alter the situation. The defendant's liability for the amount of the deposit made with it was to

28

the real owner of the deposit, regardless of the name under which the deposit was made. The use of a name other than the true name of the depositor cannot be permitted to serve as a shield under which the depositor may prevent the bank from deducting from the amount of his deposit a debt which he owed to it. This is not a case where a deposit was made for the benefit of some person other than the depositor. In such a case a different situation would be presented, and a different rule of law would be applicable. Here the bank has offset the debt due to it by the depositor, who represented his true name to be that under which he made the deposit.

" The evidence justified the conclusion that the present action was a fraudulent attempt on the part of Giuseppe Aidala to collect the full amount of his deposit from the bank, notwithstanding the fact that he was indebted to the bank to an amount in excess of that deposit.

" In an action for money had and received, it was competent for the defendant to show the true facts under which it had received the deposit. The facts as found by the court below upon ample evidence justified the refusal of the bank to pay." (Mr. Justices PAGE and BIJUR concurred.)

The Municipal Court in the case at bar, in rendering its decision in favor of the defendant, held that the funds in the defendant bank in the name of the plaintiff belonged to her father, and that the bank paid him $254.64 through error. This finding of fact by the trial court was not reversed by the Appellate Term, and we are of the opinion that it is amply sustained by the evidence at the trial.

It is the contention of the plaintiff, respondent, that the defendant, having issued its bank book wherein the plaintiff is credited with the amount deposited, is bound thereby and is estopped from offering testimony or claiming facts inconsistent with the entry in the pass book. We think this position is untenable. The bank book at most was no more than a receipt for the amount deposited and, like other receipts, was subject to explanation. (*Schwartz* v. *State Bank*, 135 App. Div. 42; *Republic Life Ins. Co.* v. *Hudson Trust Co.*, 130 id. 618; affd., 198 N. Y. 590.) It was said in *Schwartz* v. *State Bank* (*supra*, 43) that " But the mere fact that a customer pays money into a bank does not necessarily create the relation of debtor and creditor between the payee and the bank, for it is quite a common thing for one to pay money into a bank to the credit of another. Unexplained, the fact that a bank book contained an entry showing that the holder of the book had paid money into a bank would presumptively show that the bank had become the depositor's debtor to the extent of the deposit.

But the bank book being merely a receipt or a series of receipts is open to explanation * * *."

We think the testimony not only put in doubt but overcame the plaintiff's contention that she was the owner of the bank account from which the deduction was made by the defendant to the amount of the moneys dishonestly checked out by her father, and that the father was in fact the real owner of said account.

The determination of the Appellate Term should be reversed and the judgment of the Municipal Court reinstated and affirmed, with the costs to the appellant in this court and in the Appellate Term.

DOWLING, SMITH, FINCH and MARTIN, JJ., concur.

Determination of Appellate Term reversed and judgment of the Municipal Court reinstated and affirmed, with costs to appellant in this court and in the Appellate Term.